**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**DEWAYNE L. COMER,**

|  |  |
|---|---|
| **Petitioner,** | **5:01-CV-1197** |
| | **(FJS)** |
| **v.** | **96-CR-0022** |
| | **(Related criminal action)** |

**UNITED STATES OF AMERICA,**

                            **Respondent.**

_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **DEWAYNE L. COMER** | |
| **06993-052** | |
| U.S. Penitentiary | |
| P.O. Box 1000 | |
| Lewisburg, Pennsylvania 17837 | |
| Petitioner _pro se_ | |
| | |
| **OFFICE OF THE UNITED** | **BRENDA K. SANNES, AUSA** |
| **STATES ATTORNEY** | **STEPHEN C. GREEN, AUSA** |
| 100 South Clinton Street | |
| P.O. Box 7198 | |
| Syracuse, New York 13261-7198 | |
| Attorneys for Respondent | |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**[1]

**I. BACKGROUND**

On July 25, 2001, Petitioner DeWayne L. Comer filed a Motion to Vacate, Set Aside or

Correct his Sentence pursuant to 28 U.S.C. § 2255.  *See* Dkt. No. 1.  That motion challenges the

propriety of the verdict in the related criminal action in which the jury found that Petitioner was

an organizer, supervisor or manager of a continuing criminal enterprise ("CCE").  *See, e.g.,* 96-

CR-22, Dkt. No. 747.

In its October 23, 2004 Memorandum-Decision and Order, this Court denied all of the

claims that Petitioner raised in his Motion to Vacate with the exception of his ground for relief in

which he claimed that he had received the ineffective assistance of trial counsel.  *See*

Memorandum-Decision and Order dated October 23, 2004, at 7-15.[2]  With respect to that claim,

the Court determined that several of the theories that Petitioner asserted in support of his

ineffective-assistance-of-counsel claim were without merit.  *See id.* at 16-22, 25-29.  However,

this Court decided that an evidentiary hearing was necessary to address Petitioner's claims that

his trial counsel (1) failed properly to explore the possibility of Petitioner pleading guilty to one

or more of the counts contained in the Superceding Indictment in lieu of proceeding to trial on

_____

[1] A detailed discussion of the facts adduced at trial in the related criminal action, *United States v. Comer*, No. 5:96–CR–22 (N.D.N.Y. 1997) ("related criminal action"), appears in the Court's October 23, 2004 Memorandum-Decision and Order.  *See* Dkt. No. 15 at 1-6.  Although the Court presumes the parties' familiarity with its previous decision, the Court briefly reviews some of the factual background discussed in that prior decision to place the matters which the Court addresses in this Memorandum-Decision and Order in context.

[2] This Court also denied "supplemental claims" that Petitioner appeared to assert in letters he sent to the Court after he filed his Motion to Vacate.  *See* Memorandum-Decision and Order dated October 23, 2004, at 31-33.

that accusatory instrument and (2) refused to allow Petitioner to testify in his own defense to the charges against him.  *See id.* at 23-25, 30-31.  The Court also requested that Magistrate Judge DiBianco appoint counsel on Petitioner's behalf pursuant to 18 U.S.C. § 3006A(g).  *See id.* at 31. On May 12, 2005, May 24, 2005, and September 9, 2005, this Court presided over an evidentiary hearing at which the parties presented evidence relating to the above-referenced theories.


## II. DISCUSSION

**A.    Issues relating to plea agreement**

As noted in the Court's October 23, 2004 Memorandum-Decision and Order, Petitioner argued in his Motion to Vacate that his attorney rendered ineffective assistance by failing to advise him to consider entering into a plea agreement with the Government.  *See* Motion to Vacate at 6; Memorandum of Law in Support of Motion to Vacate ("Supporting Memorandum") at 18-19.  At the evidentiary hearing, Petitioner also suggested that his trial counsel misinformed him about the maximum sentence he could receive if the jury convicted him of the CCE charge. Specifically, he testified that his counsel improperly advised him that it was possible – but not certain – that he would receive a sentence of life imprisonment if the jury convicted him of that charge.  *See, e.g.,* Transcript of Evidentiary Hearing ("Evidentiary Tr.") at 19, 36-38, 92-93.

"[C]ounsel has a professional obligation to adequately inform [his] client about the considerations that are relevant to [his] client's decision to accept or deny a plea bargain." *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005).  To prevail on a § 2255 claim based upon the alleged failure of counsel to discuss a potential plea agreement, a petitioner must establish both (1) that trial counsel failed to offer advice regarding the possibility of entering into a plea agreement and

(2) that there is a reasonable probability that, but for counsel's deficiencies, the petitioner would have accepted the plea proposal and pled guilty. *See Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000) (citations omitted); *Pham v. United States*, No. 99 Civ. 11613, 2005 WL 3307060, *6 (S.D.N.Y. Dec. 7, 2005) (quotation and other citation omitted). The Second Circuit has also noted that an attorney must both be aware of and convey to his client the comparative sentence exposure his client faces between standing trial and accepting a plea offer because that information "'will often be crucial to the decision whether to plead guilty.'" *United States v. Gordon*, 156 F.3d 376, 380 (2d Cir. 1998) (quotation omitted).

Petitioner testified at the evidentiary hearing that, on or about April 30, 1996, at a meeting among his trial counsel, the lead prosecutor in the Criminal Case, AUSA Brenda Sannes, and others, Petitioner was informed that he could plead guilty to the conspiracy charge in the Superceding Indictment in full satisfaction of all charges brought against him in that accusatory instrument. *See* Evidentiary Tr. at 5-6. Petitioner also testified that his trial attorney subsequently informed him that the Government refused to honor that plea proposal and, instead, proposed a plea agreement in which Petitioner was required to plead guilty to the CCE charge. *See id.* at 18.[3] Petitioner testified that, under the terms of that proposal, he would have been required to serve a minimum of nearly twenty years in prison and could have possibly received a sentence of life imprisonment. *See id.* at 18-21. Moreover, Petitioner testified that, when he learned that the terms of the plea agreement had changed, he wrote to then-United States District Judge Rosemary S. Pooler, who presided over the related criminal trial, in October 1996 and

---

[3] The Court received into evidence at the evidentiary hearing a copy of what Petitioner claims to be the second plea proposal that the Government offered to him. *See* Government's Exhibit "4" ("Proposed Plea Agreement").

-4-

advised her that he was "bamboozled" because his trial attorney and AUSA Sannes had "tricked" him into cooperating with the Government based on a promise of pleading guilty to a conspiracy charge which the prosecutor then unilaterally changed into a proposal that required him to plead guilty to the CCE charge.[4]  *See id.* at 22-23.

The record establishes that Petitioner has mischaracterized the substance of his October 1996 letter to Judge Pooler.  In that letter, Petitioner expressed concern for his safety and the safety of his family and also complained about the perceived lack of progress of the criminal proceedings against him.  *See* Dkt. No. 43.  Petitioner never alleged in that letter that the Government had initially offered a plea agreement under which he was only required to plead guilty to the conspiracy charge and, thereafter, improperly modified that plea proposal to one requiring him to plea to the CCE charge.  *See id.*

Additionally, Magistrate Judge DiBianco presided over a hearing relating to the concerns that Petitioner expressed in that letter.  The transcript of that hearing reflects that Magistrate Judge DiBianco specifically asked Petitioner what he meant when he claimed in his letter that he believed he was being "bamboozled by the DA [sic] and the lawyer."  *See* Dkt. No. 44, Transcript of December 6, 1996 Hearing, at 12.  Petitioner agreed with Magistrate Judge DiBianco that, in using that phrase, he was merely expressing his frustration with the pace of the criminal case against him as well as his belief that the Government was not timely providing the defense with documents that supported the criminal charges against him.  *See id.* at 12-13.  Petitioner never stated at the hearing that the Government had improperly modified the terms of a prior plea

---

[4] Petitioner testified that he began to cooperate with the authorities after the Government offered the initial plea proposal to him.  *See* Evidentiary Tr. at 6-10.

agreement that it had offered to him.[5]  Furthermore, at the conclusion of the hearing, Magistrate

Judge DiBianco specifically asked Petitioner if there was "anything else [he] want[ed] to raise,"

to which Petitioner answered, "no sir."  *See id.* at 13-14.

At the evidentiary hearing, trial counsel testified that "something in the back of [his]

mind" caused him to believe that he had discussed a plea proposal with AUSA Sannes which

would have enabled Petitioner to plead guilty to the conspiracy charge.  *See* Evidentiary Tr. at

135.  Counsel admitted, however, that he could not recall whether the Government actually made

such an offer.  *See id.* at 135-36.  AUSA Sannes testified at the same hearing that she had

discussed with Petitioner's counsel the consequences that might result from a guilty plea to the

conspiracy charge, including the fact that a conviction on that count, like a CCE conviction,

might well result in Petitioner receiving a life sentence.  *See id.* at 160, 168; Proposed Plea

Agreement at ¶¶ 4.1, 9.1 (noting that life sentence was consequence of guilty plea to the CCE

charge).[6]  However, she unequivocally testified that the ***only*** plea proposal that the Government

ever actually offered to Petitioner – either verbally or in writing – was the proposal that the

Government made in September 1999 in which Petitioner was required to plead guilty to the

---

[5] Petitioner advised Magistrate Judge DiBianco that he believed that the CCE charge against him in the Superceding Indictment was inappropriate.  *See* Dkt. No. 44 at 13.  However, Petitioner never suggested, much less declared, that the CCE charge was inappropriate because the Government had agreed to drop that charge based upon a plea proposal that it had offered to him.

[6] Paragraph 4.1 of the Proposed Plea Agreement provides that "defendant understands that the continuing criminal enterprise charge to which he is entering a plea requires a mandatory minimum term of life imprisonment."  *See* Proposed Plea Agreement at ¶ 4.1.  Paragraph 9.1 of that Agreement similarly notes that life imprisonment is the sentence that the United States Sentencing Guidelines require for a conviction on the CCE charge.  *See id.* at ¶ 9.1.

CCE charge.[7]  *See* Evidentiary Tr. at 154, 161.  AUSA Sannes specifically denied Petitioner's claim that the Government ever offered him the opportunity to plead guilty to the conspiracy charge in satisfaction of all charges brought against him in the Superceding Indictment.  *See id.* at 154.

The Court finds that the credible evidence presented at the evidentiary hearing establishes that the only plea proposal that the Government made to Petitioner relating to the charges against him in the Superceding Indictment was the proposal that required him to plead guilty to the CCE charge.  Additionally, the Court concludes that the testimony at the evidentiary hearing demonstrates that trial counsel communicated the terms of that proposal to Petitioner.  *See, e.g., id.* at 18-19 (Petitioner's testimony that he rejected the September 1996 plea proposal because it permitted possible life sentence); 99-100 (trial counsel's testimony that he discussed the Government's plea offer with Petitioner "a number of times").

As noted above, at the evidentiary hearing, Petitioner appeared to supplement his ineffective-assistance claim to include an argument that his trial counsel wrongfully failed to inform him that a conviction on the CCE charge after a jury trial would necessarily result in a mandatory term of life imprisonment and instead wrongfully suggested that he might not be sentenced to life imprisonment even if he were found guilty on the CCE charge.  *See, e.g., id.* at 92-93.  In addressing this claim at the evidentiary hearing, Petitioner's trial counsel testified as follows:

> I didn't know for sure that Mr. Comer would get a mandatory life

---

[7] If Petitioner had entered into that plea agreement and cooperated with the Government, he could have avoided a mandatory life sentence notwithstanding his conviction on the CCE charge.  *See, e.g.,* Evidentiary Tr. at 166; *see also* United States Sentencing Guidelines § 5K1.1.

> sentence because I was hoping that even if we couldn't beat the continuing criminal enterprise count at trial which I didn't think we could, but if we couldn't beat that, we might be able to beat the elements with regard to the total amount of money involved or the total weight of the drugs involved so that we might not be stuck with the mandatory life sentence.

*See id.* at 101.

During cross-examination at that hearing, trial counsel reiterated that he had advised Petitioner that a life sentence following a guilty verdict on the top count in the Superceding Indictment "was a possibility, depending on – depending on how the money and the drugs weighed out." *See id.* at 111-12.

Trial counsel did not err when he advised Petitioner that a conviction on the CCE charge did not require the district court to impose a sentence of life imprisonment on him. Rather, a sentence of life imprisonment was only required in the related criminal action if Petitioner was convicted of the CCE offense ***and*** the sentencing court subsequently determined that the violation of the narcotics laws that formed the basis of the CCE conviction "involved at least 300 times the quantity of substance described in subsection 841(b)(1)(B)" – which, in the related criminal action, reflected a total of at least 1.5 kilograms of crack cocaine.[8] 21 U.S.C. §§ 848(b)(2)(A), 848(c)(1); *see also United States v. Reyes*, 922 F. Supp. 818, 839 & n.23 (S.D.N.Y. 1996) (quotation and other citations omitted); *United States v. Johnson*, 54 F.3d 1150, 1155 (4th Cir. 1995) ("[d]istribution of over 1.5 kilograms of crack is . . . one of the conditions for the mandatory life sentence provision under the CCE statute") (citations and footnote

---

[8] In its charge on the CCE count, the Court did not instruct the jury that a conviction on that charge required the Government to prove that the quantity of narcotics involved in the top count in the Superceding Indictment involved at least 1.5 kilograms of cocaine base. *See* 96-CR-22, Dkt. No. 1097 at 8130-36.

omitted)).

At the sentencing hearing in the related criminal action, the Court specifically noted on the record that the mandatory life sentence imposed on Petitioner was attributable to the fact that he was convicted of operating a continuing criminal enterprise, coupled with the Court's finding that the CCE involved the sale of at least 1.5 kilograms of crack cocaine.[9]  *See* Transcript of Sentencing of DeWayne Comer, 96-CR-22, Dkt. No. 1119 ("Sentencing Tr.") at 35-38, 53.[10] Therefore, trial counsel's advice to Petitioner that, although he could be sentenced to a term of life imprisonment following a CCE conviction, such a sentence was not certain even with a conviction on the top count in the Superceding Indictment, was not erroneous.[11]

In sum, this Court finds that the credible evidence establishes that the only plea proposal that the Government ever offered to Petitioner was the one which required him to plead guilty to the top count in the Superceding Indictment – the CCE charge.  Petitioner conceded at the evidentiary hearing that his trial attorney discussed this plea proposal with him.  *See* Evidentiary Tr. at 18-19.  Petitioner has, therefore, failed to demonstrate that his trial attorney either failed to

---

[9] The Second Circuit found "no error in the district court's attribution of 1.5 kilograms of crack to Comer."  *United States v. Giles*, No. 97-1663, 2000 WL 424142, *7 (2d Cir. Apr. 13, 2000).

[10] Judge Pooler specifically noted that the mandatory life sentence "flow[ed] from th[e] finding" that the CCE of which Petitioner was the organizer, supervisor or manager involved at least 1.5 kilograms of crack cocaine.  *See* Sentencing Tr. at 36.

[11] Petitioner appears tacitly to concede that a conviction on the CCE count did not require a term of life imprisonment.  Specifically, he argues in his supporting memorandum that the Superceding Indictment, among other things, "gave no notice of any allegation that . . . his alleged violation of drug laws satisfied the 300 time requirement (1.5 kilograms of cocaine base)" and that the sentencing court therefore improperly sentenced him to life imprisonment based upon "enhanced offense(s) not charged in his indictment."  *See* Supporting Memorandum at 4.

-9-

present the Government's plea proposal to him or, thereafter, to discuss with him the possibility of entering into that agreement.  Moreover, Petitioner plainly rejected that proposal because he could have been sentenced to life imprisonment under the terms of that agreement.  *See id.* at 18.

Additionally, for the above-stated reasons, trial counsel did not err when he advised Petitioner that a mandatory life sentence was not required even if he were found guilty of engaging in a continuing criminal enterprise.  Therefore, Petitioner has not established that such advice was objectively unreasonable.  Accordingly, in light of the foregoing, the Court denies the aspect of Petitioner's ineffective-assistance claim that relates to the plea proposal that the Government offered him in the related criminal action.

**B.     Failure to allow Petitioner to testify**

Petitioner's final theory in support of his allegation that he received ineffective assistance of trial counsel on which this Court heard testimony at the evidentiary hearing relates to his claim that his trial counsel denied him the opportunity to testify on his own behalf at the related criminal trial.  *See* Supporting Memorandum at 21-22.  Specifically, Petitioner claims in his Motion to Vacate that he informed his counsel that he wished to testify in his own defense and that his testimony "was discussed and planned prior to trial."  *See id.* at 21.  He also claims that his counsel, nevertheless, "completely excluded [him] from participating in the decision which waived his right to testify at trial."  *See id.* at 22.

"[T]he right to testify on one's own behalf in defense to a criminal charge is a fundamental constitutional right."  *Rock v. Arkansas*, 483 U.S. 44, 53 n.10 (1987) (citations omitted).  Furthermore, trial counsel has a duty to advise a defendant of his right to testify.  *See*

-10-

*Rega v. United States*, 263 F.3d 18, 21 (2d Cir. 2001) (quotation omitted).

In the present action, although Petitioner testified at the evidentiary hearing that he was unaware of his right to testify in his own defense, *see* Evidentiary Tr. at 42, 43, 185-86, he also provided testimony that clearly indicated that he ***was*** aware of his right to testify during the related criminal action. *See id.* at 39-40, 59-60, 64, 66. Additionally, trial counsel unequivocally testified at the evidentiary hearing that he informed Petitioner of his right to testify on his own behalf. *See id.* at 106-07. This Court finds that the credible testimony adduced at the evidentiary hearing establishes that Petitioner was aware of his right to testify on his own behalf at trial.[12] Thus, the Court finds that Petitioner's claim at the evidentiary hearing that he was unaware of such right is without substance.

With regard to Petitioner's claim that his trial counsel wrongfully prevented him from testifying at his criminal trial because his counsel refused to call him as a witness at the proceeding, *see* Supporting Memorandum at 21-22, this Court notes that the law in this circuit provides that "'the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter.'" *United States v. Campbell*, 300 F.3d 202, 215 (2d Cir. 2002) (quoting *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997), *cert. denied*, 522 U.S. 1128, 118 S. Ct. 1077, 140 L. Ed. 2d 135 (1998)). To succeed on a habeas claim based upon a violation of the right to testify on one's own behalf, a petitioner must satisfy the two-part test enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Brown*, 124

---

[12] In his supporting memorandum, Petitioner claims that "his testimony was discussed and planned prior to trial." *See* Supporting Memorandum at 21. That statement casts significant doubt upon Petitioner's testimony at the evidentiary hearing that he was unaware that he had the right to testify at trial.

F.3d 73, 79 (2d Cir. 1997); *United States v. Eppolito*, 436 F. Supp. 2d 532, 562 (E.D.N.Y. 2006) (citation omitted); *Collier v. United States*, 92 F. Supp. 2d 99, 104 (N.D.N.Y. 2000) (citation omitted).  Thus, a petitioner must demonstrate that his counsel's conduct was objectively unreasonable and that the deficiency in his counsel's representation prejudiced the outcome of the trial.  *See Rega*, 263 F.3d at 21 (citing *Strickland v. Washington*, 446 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).

To establish the first prong of the *Strickland* test in this context, "a petitioner 'must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand.' *Castillo*, 14 F.3d at 805 (quoting *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991) (Posner, J.)). . . ."  *Charon v. United States*, Nos. 99 CIV. 10266, 96CR586, 2000 WL 1218372, *2 (S.D.N.Y. Aug. 28, 2000) (internal citations omitted).

At the evidentiary hearing, Petitioner unequivocally testified that he informed his trial attorney that he wanted to testify in his defense of the criminal charges against him.  *See* Evidentiary Tr. at 39-40, 47.  Petitioner's trial counsel similarly testified at the evidentiary hearing that Petitioner strongly expressed his desire to testify at trial.  *See id.* at 107-08, 115, 125-26.  Additionally, trial counsel candidly admitted that, although he was aware that Petitioner wanted to testify on his own behalf, he nevertheless failed to prepare him adequately to testify at trial.  Specifically, trial counsel testified that

> [he] like[d] to have [his] clients prepared to testify, [he] spent a little time preparing Mr. Comer, but for a lot of reasons, there were times during the last several months when [they] weren't getting along all that well, and basically [he] did not have him prepared to testify the way [he] would prefer to have somebody testify –

prepare who was going to testify.

*See id.* at 106.

Later, in response to the Court's question about whether he had reviewed with Petitioner his potential trial testimony, counsel stated: "We spent some time going over what his testimony would be but not the kind of preparation I like to do with a client when I think there's a serious chance he's going to testify."  *See id.* at 136-37.

Trial counsel's failure to prepare Petitioner adequately to testify at trial despite the fact that counsel was aware that his client wanted to testify in his own defense constituted objectively unreasonable conduct on counsel's part.  Therefore, this Court finds that Petitioner has established the first prong of the *Strickland* test with respect to this aspect of his ineffective-assistance claim.

However, to succeed on such a claim, a petitioner "must show not only counsel's deficient performance, but also a reasonable probability that the deficiency prejudiced the outcome." *Rega*, 263 F.3d at 21 (citation omitted).  Thus, Petitioner must demonstrate "a reasonable probability that [his] proposed testimony would have altered the outcome of the trial."  *Id.*; *see also Atkinson v. United States*, Nos. 05-CV-286, 95-CR-232, 2005 WL 3555946, *9 (N.D.N.Y. Dec. 28, 2005) (stating that "[t]o succeed on this type of ineffective assistance of counsel claim on a collateral attack, the Petitioner bears the burden of demonstrating that, if he took the stand, the results of the trial would probably have been different" (citations omitted)).

Petitioner testified at the evidentiary hearing that, had he testified at trial, he would have testified that he "was involved with the conspiracy but [he] ain't got nothing to do with no CCE, [he] didn't tell people where to go, [he] didn't tell them what to do or how to do whatever."  *See*

Evidentiary Tr. at 40.  Petitioner also appeared to suggest that a portion of his trial testimony would have related to the burglary that had occurred at his residence.  Specifically, Petitioner testified that he informed his trial counsel that he "[had] to testify because once that burglary happened about Ricks, I told him that, listen, I explained to the same officer that night who came out to the house about the burglary the same night so I told him I had to testify."  *See id.* at 61.

In explaining why he believed that his testimony was critical to his defense, Petitioner stated, at the evidentiary hearing, that his trial testimony

> was very crucial because, I mean, after Henry testified and the other individuals testified, it just didn't fit, and further, they gave me the tapes while I was in trial and as I'm listening to the tapes, it brings me back to the actual events of what was happening.  See, like for instance, there was, on July 3rd, they was saying Henry was trying to go to New York with me, if you actually listen to the tape earlier, the actual tape, he's asked me for $400 to send his daughter back.  They had the tape, all we had to do was get it, play it, that's what he was asking me, he never tried to go to New York with me.

*See id.* at 177-78; *see also id.* at 179.[13]

When considering claims in which a petitioner asserts that his counsel wrongfully denied him his right to testify, district courts should review the evidence of the petitioner's guilt that was adduced at trial and consider whether the proposed testimony would have created a reasonable probability that the proposed testimony would have altered the outcome of the trial.  *See, e.g., Rega*, 263 F.3d at 21-26.

To establish Petitioner's guilt on the CCE count, the Government was required to

---

[13] Petitioner claimed at the evidentiary hearing that, if he had testified at trial, he would have attempted to "discredit [the] testimony painting [him] as the leader of this organization." *See* Evidentiary Tr. at 178; *see also id.* at 184.

establish, beyond a reasonable doubt, (1) that Petitioner committed the offense of conspiring to distribute and possessing with intent to distribute cocaine and cocaine base; (2) that the conspiracy was part of a series of three or more narcotics offenses that Petitioner committed; (3) that Petitioner acted in concert with five or more persons in committing the series of narcotics violations; (4) that Petitioner acted as an organizer, supervisor or manager of those five persons; and (5) that Petitioner obtained substantial income or resources from the series of narcotics violations in which he participated.  *See* 21 U.S.C. § 848; *see also* Transcript of Trial of DeWayne Comer ("Trial Tr.") at 8131-32.

With respect to the first element that the Government was required to prove, the Court notes that the Second Circuit opined that there was "overwhelming evidence" adduced at trial which established that Petitioner was involved in a conspiracy in which "dozens of kilograms of cocaine, most of which was distilled into crack," were sold to others.  *Giles*, 2000 WL 424142, at *7.  Petitioner did not offer any testimony at the evidentiary hearing which would have cast doubt on the propriety of his conviction on that charge in the Superceding Indictment.

Next, the Court notes that the evidence at trial demonstrated that on June 10, 1995, Petitioner provided Andre Faircloth with a package of crack cocaine which Mr. Faircloth was to sell for Petitioner for $900.00.  *See* Trial Tr. at 2895-97.[14]  Additionally, on June 12, 1995, Petitioner provided Mr. Faircloth with a rock of cocaine base which he directed Mr. Faircloth to sell for $1,500.00.  *See id.* at 2898-99.[15]  In cross-examining that witness, although counsel

---

[14] Mr. Faircloth subsequently provided Petitioner with $900.00 for those narcotics.  *See* Trial Tr. at 2897-99.

[15] Mr. Faircloth gave Petitioner the money required for the crack cocaine he had sold to
(continued...)

brought out the fact that Petitioner never advised Mr. Faircloth where to sell the drugs or how much he should receive for their sale, *see id.* at 2924, counsel never contested the fact that, on two separate occasions, Mr. Faircloth purchased drugs from Petitioner for resale.  *See id.* at 2920-40.  Furthermore, Victor Isaac testified that, on two separate occasions in October, 1995, he sold cocaine weighing fourteen grams and seven grams, respectively, at Petitioner's direction.  *See id.* at 2361-62.  Counsel did not challenge that testimony during his cross-examination of Mr. Isaac. *See id.* at 2576-2600.  Moreover, Petitioner did not provide any testimony at the evidentiary hearing to suggest that, had he testified at trial, he would have cast any doubt on the above-cited testimony, which established the second element required for the CCE conviction.

The jury specifically identified Willie Mitchell, Thomas Wright, Victor Isaac, Jack Comer, and Henry Woods as the five individuals over whom Petitioner acted as an organizer, supervisor or manager with respect to the series of narcotics violations charged in the Superceding Indictment.  *See* 96-CR-22, Dkt. No. 747 at 1-2.  Therefore, this Court considers whether Petitioner has established that, had he testified at trial, there is a reasonable probability that he could have persuaded the jury that he did not organize, supervise or manage one of these five individuals.

In denying Petitioner's appellate claim challenging the sufficiency of the evidence relating to his conviction on the CCE charge, the Second Circuit noted that "[t]he evidence showed . . . that Jack Comer and [Willie] Mitchell each transported cocaine from New York City to Syracuse for Comer four times throughout the conspiracy."  *Giles*, 2000 WL 424142, at *4.  Petitioner did

---

[15](...continued)
him over the course of approximately one week.  *See* Trial Tr. at 2900-02.

not provide any evidence, either in the papers he filed in support of his Motion to Vacate or at the evidentiary hearing, to suggest that, had he testified at trial, he would have provided testimony upon which the jury could have relied to conclude that he did not organize, supervise or manage Jack Comer or Willie Mitchell in conjunction with their trips to New York City for purposes of obtaining cocaine.

Next, although Petitioner testified at the evidentiary hearing that Henry Woods' testimony "didn't fit" with the Government's claim that Petitioner supervised or managed Mr. Woods, *see* Evidentiary Tr. at 177-78, the Court notes that such testimony must be considered along with the Second Circuit's specific finding that "there was ***overwhelming evidence*** that [Mr. Woods] was Comer's willing gopher and associate" during the course of the conspiracy charged in the Superceding Indictment. *Giles*, 2000 WL 424142, at *4 (emphasis added). In support of that determination, the *Giles* court noted that "[a]mong other things, Woods brought Comer cocaine for waiting customers, brought money to Comer to be used for a drug purchase, and pooled his resources with Comer to make kilogram-sized purchases." *Id.* Petitioner's relatively vague testimony at the evidentiary hearing concerning the manner in which his trial testimony might have cast doubt on the Government's proof relating to Mr. Woods' association with him fell far short of establishing a reasonable probability that his proposed testimony would have altered the outcome of the trial.

With respect to Thomas Wright, the Second Circuit noted that

> the proof at trial showed, among other things, that he delivered
> cocaine for Comer, accompanied Comer on at least one cocaine-
> procurement trip to New York City, assisted Comer in beating a
> co-conspirator suspected of having stolen drug proceeds, and may
> have even taken orders and payment from Comer's customers.

-17-

*Giles*, 2000 WL 424142, at *3.

Petitioner failed to provide any testimony at the evidentiary hearing to indicate that he did not supervise or manage Mr. Wright in conjunction with Petitioner's selling of narcotics.

Turning to the proof presented at trial regarding Mr. Isaac, as noted above, the Government established that he sold cocaine on two separate occasions for Petitioner in October, 1995. *See* Trial Tr. at 2361-62. Additionally, Mr. Isaac testified that he traveled with Petitioner to New York City on several occasions during which kilogram-sized quantities were purchased. *See id.* at 2369-70. On one of these trips, Mr. Isaac, Petitioner and another individual were arrested when law enforcement agents discovered cocaine in their car which had been stopped for a traffic infraction. *See id.* at 2372-74, 3083-89. Petitioner thereafter provided a bail bondsman with the money necessary to bail Mr. Isaac out of jail. *See id.* at 2374-75. Petitioner failed to provide any testimony at the evidentiary hearing to suggest that he could have provided trial testimony that would have cast doubt on the Government's evidence which established that he supervised or managed Mr. Isaac in conjunction with the criminal enterprise that distributed illegal narcotics.

Based upon the foregoing, the Court concludes that Petitioner has failed to demonstrate a reasonable probability that his proposed testimony would have altered the jury's determination that he acted as an organizer, supervisor or manager of the above-mentioned individuals in committing the series of narcotics violations referenced in the Superceding Indictment. *See* 96-CR-22, Dkt. No. 750 at ¶¶ 2-3. That Special Verdict further found that Petitioner and other co-conspirators received at least $1,000,000.00 in proceeds as a result of the narcotics violations set forth in Counts One and Two of the Superceding Indictment. *See id.* at ¶ 1. Finally, Petitioner

-18-

did not present any evidence in this civil action to suggest that the jury's finding that he obtained

substantial income or resources as a result of his engagement in the narcotics violations

referenced in the Superceding Indictment was erroneous in any way.

In sum, this Court concludes that Petitioner has failed to establish that, if he had testified

at his criminal trial, there existed a reasonable probability that his proposed testimony would

have altered the jury's determination that he was guilty of the CCE offense charged in the

Superceding Indictment.  Additionally, Petitioner did not present any evidence either in the

papers he filed with the Court or at the evidentiary hearing from which this Court could properly

find that, had Petitioner testified at trial, there was a reasonable probability that his proposed

testimony would have resulted in his acquittal on any of the four separate cocaine-related

offenses of which the jury found him guilty.[16]  *See, e.g.,* 96-CR-22, Dkt. No. 747, at ¶¶ 3-6.

Since Petitioner has not established a reasonable probability that his proposed testimony

would have altered the jury's verdict in the related criminal action, he has not established this

final theory upon which he bases his ineffective-assistance-of-trial-counsel claim.  *See Rega*, 263

F.3d at 22; *Atkinson*, 2005 WL 3555946, at *9; *Carneglia v. United States*, No. 03CV6388, 2006

WL 148908, *5 (E.D.N.Y. Jan. 18, 2006) (denying § 2255 petition based upon claim that

attorney prevented the petitioner from testifying on the ground that "[i]n light of the

overwhelming evidence of guilt produced at the trial . . . it [was] highly unlikely that the

---

[16] As the Court noted in its October 23, 2004 Memorandum-Decision and Order, in light of Petitioner's CCE conviction, Judge Pooler vacated Petitioner's conviction on Count Two of the Superceding Indictment, which charged Petitioner with conspiracy to possess with intent to distribute and to distribute cocaine, because that offense is considered a lesser included offense of the CCE conviction.  *See* Memorandum-Decision and Order dated October 23, 2004, at 11-12; *see also* Sentencing Tr. at 53.

petitioner's testimony would have led to his acquittal"); *Charon*, 2000 WL 1218372, at *3 (stating that, "[e]ven assuming that petitioner was indeed prevented from taking the stand, there is nothing in the record to suggest that his testimony would have resulted in anything other than a conviction" (citations omitted)).

## III. CONCLUSION

After carefully reviewing the entire file in this matter, the parties' submissions, the applicable law, the transcript of the evidentiary hearing conducted in this matter, and for the reasons stated in the Court's October 23, 2004 Memorandum-Decision and Order and herein, the Court hereby

**ORDERS** that Petitioner's claim that his trial counsel rendered ineffective assistance because he failed to advise him about (1) pursuing a plea agreement with the Government and/or (2) the sentencing exposure he would face following a conviction on the CCE charge is **DENIED**; and the Court further

**ORDERS** that Petitioner's claim that he received ineffective assistance of counsel because his trial attorney failed to allow him to testify in his own defense at trial is **DENIED**; and the Court further

**ORDERS** that Petitioner's Motion to Vacate is **DENIED and DISMISSED** in its entirety; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties and on William C. Sullivan, Esq., by electronic means or by regular mail.

**IT IS SO ORDERED.**

Dated: November 6, 2006
         Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge